UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

DOROTHY CAROLYN WOODHAM                                                        PLAINTIFF

V.                                                            CIVIL ACTION NO.1:10CV308-SA-DAS

MICHAEL J. ASTRUE                                                              DEFENDANT

### REPORT AND RECOMMENDATION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying the application of the claimant, Dorothy Woodham, for disability benefits. The parties have not consented to have the magistrate judge conduct all proceedings in this case; therefore, the undersigned submits this report and recommendation to the United States District Judge.

### 1. PROCEDURAL AND FACTUAL HISTORY

The claimant filed an application for disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., on May 11, 2007, alleging the onset of disability beginning May 1, 2006. The application was denied initially and on reconsideration. The claimant requested and was granted a hearing. In a decision dated September 29, 2009, the administrative law judge ("ALJ"), found that the claimant was not disabled. He found that she had medically determinable impairments of back pain, rib pain and pelvic pain, but that none of these conditions were severe impairments. The ALJ's decision became final decision of the Commissioner when the Appeals Counsel denied her request for review on September 21, 2010. The ALJ's decision is now ripe for review under § 205(g) of the Social Security Act. *See* 42 U.S.C. § 405(g).

### 2. LAW AND STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential process.[1] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining the burden at each of the first four levels, the burden then shifts to the Commissioner at step five.[2] First, the claimant must prove she is not currently engaged in substantial gainful activity.[3] Second, the claimant must prove her impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities...." [4] At step three the ALJ must conclude the claimant is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, § § 1.00-114.02 (2011).[5] Fourth, the claimant bears the burden of proving she is incapable of meeting the physical and/or mental demands of her past relevant work.[6] If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[7] If the Commissioner proves other work exists which the claimant can perform, the

---

[1] *See*, 20 C.F.R. § 404.1520 (2012).

[2] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[3] 20 C.F.R. § 404.1520(b) (2012).

[4] 20 C.F.R. § 404.1520(c) (2012).

[5] 20 C.F.R. § 404.1520(d) (2012). If a claimant's impairment meets certain criteria, then claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. § 404.1525 (2012).

[6] 20 C.F.R. § 404.1520(f) (2012).

[7] 20 C.F.R. § 404.1520(g)(1) (2012).

claimant is given the chance to prove that she cannot, in fact, perform that work.[8]

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405 (g.); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is a conclusive and must be upheld. *Perales*, 402 U.S. at 390.

---

[8] *Muse*, 925 F.2d at 789.

3. ANALYSIS

The claimant presents three issues for this appeal. She argues the ALJ's finding that she does not have any severe impairments is not supported by substantial evidence. She also asserts the ALJ ignored objective medical evidence, in the record, that established the plaintiff's impairments. Second, she asserts that the administrative law judge failed to apply the correct standard in determining her credibility and failed to make adequate factual findings to support his determination that her testimony was not credible. Finally the claimant argues that the record, as a whole, supports a finding that she is disabled.

A. SEVERITY OF THE CLAIMANT'S IMPAIRMENTS

The claimant asserts that there is not substantial evidence to support the ALJ's determination that she has no severe impairments. As part of this claim, she asserts that the ALJ ignored objective medical evidence in the record "in determining that the plaintiff's impairments were not established by medical evidence." The plaintiff then quotes the following language from the ALJ's decision.

> The undersigned cannot find evidence of a medically determinable impairment purely on the claimant's reported history of diagnoses. Instead, an impairment must result from "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinic and laboratory diagnostic techniques." An impairment must be established "by medical evidence, consisting of signs, symptoms, and laboratory findings" and not solely on the claimant's statements of symptoms or diagnoses.

This language has apparently contributed to a misunderstanding of the ALJ's holding. The claimant's brief is not clear regarding what conditions she is referring to in making this argument, but the ALJ did not find she had no medically determinable conditions. Rather he specifically found "claimant has the following medically determinable impairments: back pain,

4

rib pain and pelvic pain." He then held that none of these three medically determinable impairments were severe impairments.

Only the claimant's asserted carpal tunnel syndrome was not found to be a medically determinable condition. The ALJ's finding in this regard is supported by substantial evidence. There is one reference to hand pain in the medical records from April 2007 at the Smithville medical clinic. Plaintiff had a positive Phalen's sign but obtained no further treatment or testing.

The claimant blames the lack of further treatment or testing on her lack of funds and insurance, but there is no evidence that she either sought low-cost care or was denied medical care because of her financial condition. *Murphy V. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992). She did not hesitate on two occasions to seek emergency room care. In neither of these visits is there a mention of hand pain. Further supporting the ALJ's determination on the carpal tunnel claim is the finding at the consultative exam of 5/5 bilateral grip strength. There is substantial evidence to support the finding that the alleged carpal tunnel syndrome was not medically proven.

The ALJ clearly considered the objective medical evidence in determining which impairments were medically proven and in making his finding that none of the impairments were severe. In determining whether the impairments were severe, the ALJ initially determined that the claimant's impairments of back, hip and pelvic pain could be expected to produce the reported symptoms. However, he found that the claimant's testimony was not credible to the extent "inconsistent with a finding that the claimant has no severe impairment." This credibility determination is raised separately in the second ground and discussed there in greater detail, but a review of the medical evidence supports the finding that the claimant had no severe

impairments.

Dr. Robert Tatum examined the claimant at the request of the Social Security Administration. Woodham complained to Tatum of low back pain, hip, leg hand and shoulder pain. She reported to Tatum that she takes care of her personal needs. She was able to do some standing and to walk a half-mile. She told Tatum she could lift ten pounds frequently and perform some household chores, though she reported that sweeping, mopping and dish washing caused her pain. She also reported that she could shop with assistance, and that she occasionally used a riding lawn mower. She reported no hospitalizations or emergency room visits in the twenty-four months prior to this examination. She reported being able to climb two flights of stairs. Her only alleged surgery after the alleged date of onset of disability was for the removal of perineal skin tags. Her medications were Diclofenac and Tramadol. Diclofenac is a nonsteroidal anti-inflammatory, while Tramadol is a narcotic-like painkiller.

Tatum noted that Woodham walked without assistance and was able to get on and off the examining table without difficulty. She was able to get into and rise from a chair normally. She had normal grip strength bilaterally. She had normal range of motion in her lumbar spine, ankles and shoulders. The straight leg raising test was negative. Her heel walking, squatting, standing on her toes, and heel-to-toe walking were all normal.

Tatum found that the back pain and rib pain were not significant limitations. He noted that the pelvic pain was the most severe finding which indicated an ongoing problem. He opined this might become significant in the future. It was not found to be a presently significant

limitation in the claimant.[9]

Dr. Lewis Sadler reviewed the claimant's records for her complaints of back pain and found that she had good range of motion. He found the pelvic and rib pain caused no functional loss. He therefore rated her impairments as not severe. The gynecological records show routine care, aside from a period of treatment for abnormal uterine bleeding. The previously mentioned skin tags were surgically removed without complications in December 2005. Another state disability doctor, Karen Howlett reviewed the gynecology records and concurred with Sadler that the claimant's impairments were not severe.

The claimant's primary treating physician records from the Smithville clinic note four visits. In June 2006, the claimant was seen with complaints of joint pain in the wrist and elbows. She also complained of her stomach burning and nausea. During a visit in July 11, 2006, the claimant's blood pressure was rechecked. She was found to be unable to take medicine for "arm pain" secondary to her feet swelling. New medications were prescribed. She was seen on July 18, 2006, because she was not tolerating Mobic, a pain medicine.

She was next seen at the Smithville clinic, nine months later and one month before making her application for disability benefits. On that visit, on April 7, 2007, she complained of pain and being unable to grip. She said these problems had been present for two years but had worsened during the preceding month. She said there was no precipitating injury. There was a positive Phelan's sign, but no diagnosis of carpal tunnel syndrome. The doctor explained stretches to be done by the patient for the condition.

---

[9] Interestingly, while the claimant submitted several years of gynecological records which showed abnormal bleeding problems, those records do not reference complaints of pelvic pain.

There are two emergency room visits in the record. On August 8, 2008, the claimant was seen for blood in her urine and generalized pain. A CT of abdomen and pelvis found a calcific density in the left lower quadrant that was believed to be in the ureter. Follow-up was recommended, but there is no further record of a continuing symptoms or treatment. She was also seen in the emergency room on September 12, 2008 with complaints of low back pain of five days duration.

A CT was performed on the claimant on June 11, 2009 which found "mild degenerative disc disease with broad-based posterior disc bulging at L5-S1 resulting in mild thecal sac and bilateral, lateral recess and foraminal encroachment, slightly greater on the right," and a "minimal disc bulge" at L4-5 that was "without stenosis."

While the final determination regarding the severity of the impairments included the ALJ's rejection of the claimant's testimony regarding the severity of her symptoms and limitations, the medical proof provides substantial support for the ALJ's finding that the claimant's impairments are not severe.

### B. THE CLAIMANT'S CREDIBILITY

Woodham asserts that the rejection of her testimony as not credible regarding the intensity, persistence and limiting effects of her symptoms was the product of the application of an incorrect legal standard. The claimant fails to point out precisely where the ALJ used an inappropriate standard, and none is apparent in the record. The ALJ is in the best position to evaluate the claimant's credibility and the determination is entitled to great deference. *James v. Bowen*, 793 F. 2d 702, 706 (5th Cir. 1986). Accordingly, the court will not upset the ALJ's credibility findings if there is substantial evidence to support those findings. See *Carrier v.*

*Sullivan*, 944 F.2d 243, 246 (5th Cir. 1991); *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).

The final step in assessing the severity of impairments requires a credibility determination regarding the claimed intensity, persistence and limiting effects impairments. In rejecting the claimant's statements, the ALJ pointed to inconsistencies between the claimant's testimony regarding the intensity of her pain and her failure to obtain regular medical treatment.[10] He rejected claimed limitations in activities of daily living. He found the claimed limitations inconsistent with other reports given by the claimant, such as the reports made to Dr. Tatum and included in his report. The ALJ noted the claimant ceased working, not because of her symptoms, but because the plant where she worked had closed. It was proper for the ALJ to consider this evidence in making a credibility determination. The ALJ gave the reasons for his credibility determination and the record supports those findings.

## 4. RECOMMENDATION

Based on the foregoing analysis and findings, it is recommended that the Commissioner's decision be affirmed.

The parties are referred to 28 U.S.C. § 636(b)(1) and Local Rule 72(a)(3) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections must be in writing and must be filed within fourteen days of this date. Failure to timely file objections to the proposed findings and recommendations will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions that are accepted by the district court. *Douglass v. United Services Automobile*

---

[10] The claimant testified that her pain was 10/10 without medications and 7/10 with medications but there are just a few doctor visits. As previously noted the only complaint of pelvic pain in the medical records is during the consultative examination.

*Association*, 79 F.3d 1415 (5th Cir. 1996).

This the 31st day of January, 2012.

/s/ David A. Sanders
U.S. MAGISTRATE JUDGE